KONENKAMP, Justice
(dissenting).
[¶ 36.] The Court analyzes the issue here backwards. It begins with the exemption statute, SDCL 10-45-12.1, without first looking to what taxable services Magellan provides. To be exempt, the activity must first be taxable. As SDCL 10-45-4 provides, the gross receipts of a service rendered by a business are taxable “unless the service is specifically exempt from the provisions of this chapter.” (Emphasis added.) A “service” is defined as “all activities engaged in for other persons for a fee, retainer, commission, or other monetary charge, which activities involve predominantly the performance of a service as distinguished from selling property.” SDCL 10-45-4.1.
[¶ 37.] Magellan Pipeline Company provides multiple services for its customers, including storing, transporting, and injecting additives into refined petroleum products, and calibrating equipment. Because these services are rendered to customers for a fee, those services are taxable unless specifically exempted.
[¶ 38.] After identifying the taxable services, the next step is to determine whether any of those services are specifically exempted. Taxpayers have the burden of proving entitlement to an exemption. In re State Sales & Use Tax Liab. of Pam Oil, Inc., 459 N.W.2d 251, 255 (S.D.1990). Exempting statutes are construed *412 strictly in favor of the taxing power. Watertown Coop., 2001 S.D. 56, ¶ 10, 627 N.W.2d at 171 (citing In re State & City Sales Tax Liab. of Quality Serv. Railcar Repair Corp., 437 N.W.2d 209, 211 (S.D.1989)).
[¶ 39.] Under SDCL 10-45-12.1, “[t]he following services enumerated in the Standard Industrial Classification Manual, 1987, as prepared by the Statistical Policy Division of the Office of Management and Budget, Office of the President are exempt from the provisions of this chapter: ... pipe lines, except natural gas (major group 46)[.]” (Emphasis added.) Contrary to the special writing’s view, the language of SDCL 10-45-12.1 does not show that the Legislature acted specifically to create or describe “two types of exemptions.” Rather, a closer comparison of the statute and the SIC Manual reveals that the Legislature simply took the language used by the SIC Manual and chose which services it intended to allow service exemptions. In particular, the language “pipe lines, except natural gas” is directly from the SIC Manual. The SIC Manual, not the South Dakota Legislature, excluded natural gas from major group 46. Thus, it is illogical to declare that the Legislature’s different treatment of petroleum pipelines and natural gas is a significant indication of the Legislature’s intent to treat petroleum pipelines “more broadly.”
[¶ 40.] Moreover, because the Legislature specifically referred to the SIC Manual and because what constitutes “pipe lines,” as contemplated by SDCL 10-45-12.1 is not clear from the text of the statute, we must examine the language of that manual. In regard to “pipe lines, except natural gas,” SIC Group 46 is the starting point. That group “includes establishments primarily engaged in the pipeline transportation of petroleum or other commodities, except natural gas.” Then, within group 46, there are three Industry Groups. Relevant here is the industry entitled, Refined Petroleum Pipelines. That industry is defined as “[establishments primarily engaged in the pipeline transportation of refined products of petroleum, such as gasoline and fuel oil.” Magellan is an establishment primarily engaged in the pipeline transportation of refined petroleum products.
[¶ 41.] The analysis, however, should not stop there. Because Magellan’s services of storing refined petroleum, calibrating equipment, and injecting additives are not necessarily services offered by an establishment primarily engaged in the pipeline transportation of refined petroleum, Magellan must prove entitlement to an exemption for those services. On this point, the SIC Manual is controlling.
[¶ 42.] The SIC Manual defines an “establishment” as “an economic unit, generally at a single physical location, where business is conducted or whei-e services or industrial operations are performed.” “Where distinct and separate economic activities are performed at a single physical location ... such activity should be treated as a separate establishment where: (1) no one industry description in the classification includes such combined activities; (2) the employment in each such economic activity is significant; and (3) separate reports can be prepared on the number of employees, their wages and salaries, sales or receipts, and other types of establishment data.” (Emphasis added.)
[¶ 43.] Here, Magellan, a pipeline establishment, performs distinct and separate economic activities with refined petroleum products: storing, transporting, injecting additives either by customer request or by legal mandate, and calibrating equipment. There is no evidence that a pipeline establishment stores refined petroleum, calibrates equipment, and injects *413 additives as part of its service of transporting refined petroleum. Moreover, there is no industry classification cited to include all such activities. Thus, Magellan has failed to meet its burden of proving an exemption. And Magellan keeps separate sales reports on its injecting of additives and equipment calibration. Because we must remain cognizant of the fact that “ [exemptions are a matter of legislative grace and doubts are resolved in favor of taxation[,]” Magellan’s separate and distinct services of injecting additives and calibrating equipment should be deemed separate and distinct economic activities with refined petroleum products. See In re State Sales & Use Tax Liab. of Townley, 417 N.W.2d 398, 400 (S.D.1987).